178 So. 223

## HURSTON v. STATE.

### 5 Div. 253.

Supreme Court of Alabama.

Jan. 13, 1938.

Duke & Duke, of Opelika, for appellant.

BOULDIN, Justice.

While not required so to do, counsel for appellant has made an assignment of errors on the record and argued in brief the various rulings relied upon as ground for reversal.

While not relieving the court from the duty to examine the record for any and all reversible errors, this practice is helpful. In the instant case, we consider the points raised in the order presented in brief.

The defendant was convicted of murder in the second degree. Without dispute, de-

fendant killed the deceased, A. C. Wright, by shooting him with a shotgun.

Self-defense, and provocation going to the degree of the offense, were the main issues of fact.

■ Defendant's refused charge No. 2 reads:

"I charge you gentlemen of the jury, if the evidence of the State consists in statements of witnesses, the truth of which the jury have reasonable doubt, you cannot convict on such evidence, although you may not believe the testimony of defendant's witnesses."

In Segars v. State, 86 Ala. 59, 5 So. 558, 559, the refusal of a charge to like effect was held reversible error under the state of the evidence in that case. It appeared the state relied upon the testimony of a single witness, impeached somewhat by contradictory statements, and defendant's evidence was wholly exculpatory.

The court emphasized the rule that prima facie evidence of guilt in a criminal case does not rebut the presumption of innocence or shift the burden of proof. In conclusion, it was said:

"The evidence on the part of the defendant being wholly exculpatory, the effect of refusing the charge is to shift the burden of proof, on a prima facie case of guilt being made by the prosecution."

Literally, of course, a refused charge, one which never goes to the jury, cannot shift the burden of proof. The real effect of the holding was that defendant was entitled to an instruction that prima facie evidence of guilt does not shift the burden of proof. Otherwise stated, the evidence of guilt must convince the jury beyond a reasonable doubt. If the state's evidence is not convincing beyond a reasonable doubt, and the evidence for defendant is wholly exculpatory, adding nothing to the weight of the state's evidence, when considered as a whole, the verdict should be not guilty.

■ Since the adoption of Code, § 9509:

"The refusal of a charge, though a correct statement of the law, shall not be cause for a reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury, in the court's general charge or in charges given at the request of parties."

The trial court in his oral charge fully covered the law touching the burden and measure of proof, giving, among others, such instructions as these:

"The State of Alabama takes upon itself the burden of proving that charge to a jury beyond a reasonable doubt. And the defendant goes into the trial as every defendant does, with the presumption of innocence around him. The law presumes him to be innocent, and that presumption remains with him and it remains with him as a matter of evidence until the evidence is brought to you, presented to you sufficient to convince you beyond a reasonable doubt that he is guilty. * * *

"If there is a reasonable doubt existing in your minds after considering all the evidence painstakingly, conscientiously under your oaths as jurors to find a true verdict, if you have a reasonable doubt then your verdict should be one of acquittal."

The court further instructed the jury that the credibility of witnesses, and the weight of their testimony, was wholly for the jury.

These instructions fully covered the rules of law to which refused charge No. 2 was directed, and in more logical and understandible form. Since the adoption of rule 45 and Code, § 9509, it is not reversible error in any case to refuse charge 2, supra, where the trial court in his oral charge, or in given charges, has instructed the jury in substance and effect as in this case.

■ Apart from given instructions, charge 2 is properly limited to the class of cases in which it has been approved. Where phases of the defendant's evidence tend to corroborate and strengthen the state's evidence, when considered as a whole, a charge to like effect as No. 2 should be refused as misleading. McConnell v. Adair, 147 Ala. 599, 41 So. 419; Koch v. State, 115 Ala. 99, 22 So. 471; Love v. State, 218 Ala. 66, 117 So. 400; McDaniels v. State, 162 Ala. 25, 50 So. 324.

■ The charge was refused without error in this case. For like reasons, charge 6 was refused without error.

The court's oral charge instructed the jury that imminent danger of death or of grievous bodily harm at the hands of deceased presented the necessity required by law in cases of self-defense.

Charge 3 was, therefore, refused without error. Refused charge set out in assignment of error No. 5 was argumentative in character, singled out and gave special emphasis to evidence or lack of evidence of motive.

On the whole record we find no apparent injury resulted from a refusal of such charge.

■ Refused charges 7 to 13, inclusive, were charges in varied form on the question of reasonable doubt. The rule of law in this regard being fully given in the oral charge and in given charges; there was no error in their refusal.

■ A number of questions were reserved on rulings upon the admission or rejection of testimony.

They may be treated quite generally. An examining physician, in describing the wounds on the body of deceased, may testify they were "just puncture wounds, just like shot with a shot gun"; that in his judgment the wounds were caused from a shotgun. Moreover, it was not denied that they were produced by defendant's shooting deceased with a shotgun.

■ State witness, Willie Jackson, having testified she did not know the defendant, that she was at home in bed near the place of shooting on the night of the homicide, and heard the gun fire, was asked:

"Q. Did you hear anything before that time? A. He called him three times.

"Q. Who called him? A. The man whatever shot him."

Objection and motion to exclude the last answer on the ground that witness had testified she did not know defendant was overruled and exception reserved.

While the answer at that stage may indicate a mere supposition, further examination of the witness disclosed that the voice called: "A. C., A. C. that you A. C.?" That A. C. told him "Yes," and the the other voice said, "Damned if I ain't going to kill you tonight," and at that time the gun fired. Thus was disclosed a basis of fact on which she could reasonably associate the voice who called with the man who fired, a matter of judgment. Other witnesses, especially A. C. Marsh, testifying as an eyewitness, deposed, in effect, that defendant having placed himself near the residence of deceased called to him as he passed near, in the nighttime, as if to identify him, and being assured, raised the gun and fired. Without reasonable question, if anybody called as testified to by these witnesses, it was defendant, the man

"whatever shot him." In such case, error, if any, in refusing to exclude the statement under review, could work no injury to defendant.

■ Evidence tending to show that shortly before, and on the night of the shooting, defendant, armed with a gun, was searching for deceased, his violent mood and manner, evidenced by his words and acts, was competent to show malice, who was the aggressor, etc. The evidence of Sammie Shelton and Henderson Thomas, both relating to the same occurrence, the statement of either may be looked to to identify the time and place. Moreover, the evidence within itself disclosed this was before the killing. That defendant was calling for "A. C. Wright" rather than "A. C. Marsh" was a matter for the jury under all the circumstances. We find no reversible error in the record.

Affirmed.

ANDERSON, C. J., and GARDNER, and FOSTER, JJ., concur.